FILED
JUL 28 2008
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LANDOLL CORPORATION<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA,<br>Defendant. | ) | Case No. 08-542 C<br>Judge: ________ |

**LANDOLL CORPORATION'S MEMORANDUM OF POINTS AN AUTHORITIES IN SUPPORT OF ITS APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ITS MOTION FOR PRELIMINARY INJUNCTION**

Landoll Corporation ("Landoll") seeks injunctive relief to avoid allowing the United States, acting through the Department of Defense ("DoD"), United States Army Tank-Automotive and Armament Command ("TACOM") to proceed with performance of the subject contract.

Until such time that this Court can issue a ruling on the merits of Landoll's Complaint-Landoll respectfully requests that this Court issue a temporary restraining order (and/or preliminary injunction) precluding the DoD and WSE Leasing, Inc. ("WSE") from performing Contract No. W56HZV-08-C-D666, awarded under GSA Federal Supply System ("FSS") Solicitation No. RFQ279033 ("the Solicitation").

## I. STATEMENT OF THE QUESTION

Is Landoll Corporation entitled to a temporary restraining order and/or preliminary injunction to require the DoD to stay WSE's performance of the contract awarded pursuant to the Solicitation?

## II. STATEMENT OF THE CASE

1. On May 07, 2008, TACOM, procuring through the FSS "e-Buy" Program, issued RFQ No. RFQ279033 ("Solicitation") for the purchase of an estimated quantity of between 25 to 40 Tilt-Deck Hydraulic Trailers. A copy of that Solicitation is attached to the Complaint as Exhibit "A".
2. TACOM set the closing date for submission of proposals for May 12, 2008.
3. The Solicitation contained the following information relevant to this action:
   a. The Solicitation was an "urgent requirement" for the United States Army Reserve;
   b. "All products and services offered must be on your current GSA schedule contract…Reminder: Please do not include open market items with your offer."
   c. "The evaluation will be based on lowest price technically acceptable, in accordance with attachment 0001."
   d. Delivery must be made within 90 days of award.
4. The Solicitation contained a set of specifications (referenced as "attachment 0001"), attached to the Complaint as Exhibit "B"; those specifications are taken from the specifications for Landoll's proprietary product, the Landoll 610-NG Model (copy attached to Complaint as Exhibit "C").
5. The Solicitation listed only one category under the FSS from which TACOM was seeking bids: Category 23V 101, "Enclosed Concession Trailers, Mobile Shell Sound Stage Trailers, Dry Cargo Van Trailers, Lowbed Trailers and Platform Trailers".
6. Landoll's GSA Federal Supply Contract, Category 23V 101, contains only one tilt-deck hydraulic trailer capable of meeting the RFQ, and that is Item LQ05120801 610NG on the

Federal Supply Schedule. Two pictures of its tilt-deck hydraulic trailer are attached to the Complaint as Exhibit "D". Landoll's 610-NG trailer has many superior characteristics and possibly the only trailer in the world that could meet the Solicitation specifications, see Exhibit "K" to the Complaint.

7. Accordingly, Landoll submitted its quote based upon Item LQ05120801 on May 12, 2008; because its price is fixed per its FSS Schedule contract, Landoll offered its schedule price and based upon 25 units, a total price of $2,371,425.00. (Copy attached to Complaint as Exhibit "E").

8. On July 17, 2008, TACOM, for the first time, notified Landoll in writing that TACOM had awarded the Solicitation to WSE Leasing, Inc. (hereinafter referred to as "Notice"; Copy attached to Complaint as Exhibit "F") (On July 16, 2008, the CO TACOM gave us verbal notification.)

9. TACOM's Notice shows that it received only two offers, logically, Landoll and WSE.

10. TACOM did not otherwise post or announce the award to WSE on the FSS System on July 17, 2008, or at any prior time.

11. The GSA Federal Supply Schedule (e-library), lists 18 contractors with GSA Supply Schedule contract under Category 23V 101,(copy attached to the Complaint as Exhibit "G").

12. WSE's GSA Schedule listings show it has no other category listing other than Category 23V (see Exhibit "H" attached to the Complaint).

13. WSE offers three trailers on its GSA Schedule Contract under Category 23V 101: (a) TL2000 Flatbed semi-trailer; (b) DTL Dropdeck Flatbed semi-trailer; and (c) 2135

bottom dump semi-trailer, general purpose, a listing of which is attached to the Complaint as "H".

14. None of WSE's trailers listed on the FSS meet the Solicitation specifications in the following ways, among other ways:

A. None of the WSE trailers are tilt-deck trailers; this is essential for the functioning of the trailer because it is used to transport large piece of disabled equipment; see Exhibit D to the Complaint for an example of intended use;
B. None of the WSE trailers are hydraulically driven; over 40% of the Solicitation specifications are devoted to the criteria for the hydraulic system;
C. None of the WSE trailers are of kingpin height of 60-64" (the kingpin is the connecting point between the trailer and the towing tractor); the kingpin height is very important issue when the towing vehicle transporting the trailer is an M916 tractor (commonly used with this trailer) and it has a fifth wheel height of 64 inches; this height must be equal to the kingpin height of the trailer to insure the load is carried in level position; a lower height kingpin would cause instability and cause excess weight on the rear an overloaded condition;
D. None of the WSE trailers have a 3 ½ inch diameter kingpin; again the M916 towing vehicle has a fifth wheel receptacle for a 3.5" kingpin;
E. WSE does not manufacture these trailers; the manufacturer is Transcraft. Thus, any modifications to the trailer would have to be engineered by others and could not possibly be accomplished in 90 days or 153 days.

15. Based upon these facts, WSE did not, and could not, submit a Solicitation offer based upon its GSA Schedule Contract. Thus, it offered an 'open market item' contrary to the Solicitation and was not eligible for award.

16. On July 18, 2008, Landoll received from TACOM a copy of the contract awarded to WSE, (hereinafter referred to as "Contract", and attached to the Complaint as Exhibit "J"); it shows at page 2, paragraph 1.a that WSE submitted its offer on May 23, 2008—11 days after the closing date for submission for proposals ("the Government accepts your proposal dated May 23, 2008").

17. Contrary to the 90 day delivery date requirement stated in the Solicitation, the Contract

shows WSE was allowed anywhere from November 10, 2008--133 days from award and as late as November 30, 2008—153 days after award for delivery.

18. TACOM did not notify Landoll that it had extended the closing date or modified any of the terms of the proposed order.

19. The contract states that it is subject to a set of specifications dated June 24, 2008—over 45 days after the closing date for submission of proposals.

20. TACOM did not give Landoll the benefit of these updated specifications at any time, and certainly not before the closing date for submission of proposals.

## III. ARGUMENT

When considering an application for a temporary restraining order or a motion for preliminary injunctive relief, the Court must weigh four factors: "(1) immediate and irreparable injury to the movant; (2) the movant's likelihood of success on the merits; (3) the public interest; and (4) the balance of the hardship on all the parties." *Aeroplate Corp. v. United States*, 67 Fed. Cl. 1,2 (2005) (quoting *U.S. Ass'n of Importers of Textiles & Apparel v. United States*, 413 F.3d 1344, 1347-48 (Fed. Cir. 2005)). No single factor is determinative, and "the weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp. V. United States*, 3 F.3d 424, 427 ( Fed. Cir. 1993). Applying these factors to the circumstances of this case, Landoll is entitled to injunctive relief.

### A. Landoll Will Prevail on the Merits of its Complaint[1]

[1] This factor- likelihood of success on the merits- is the most significant one in the injunctive relief calculus because "Congress did not require any evaluation of injunctive relief factors as a prerequisite to stay of contract performance upon the filing of a protest with the GAO." *Advanced Systems Development, Inc. V. United States*, 72 Fed. Cl. 25, 36 (July 21, 2006) (quoting *Chapman Law Firm Co. v. United States*, 65 Fed. Cl. 422, 424 (2005), and holding that

As a general rule, contracting agencies are required to obtain full and open competition in the procurement of supplies and services. 41 U.S.C. §253(a)(1)(A) (1994); Federal Acquisition Regulation (FAR) §6.101. The Federal Supply System ("FSS") program, directed and managed by the General Services Administration, provides federal agencies with a simplified process for obtaining commonly used commercial supplies and services at prices associated with volume buying. FAR §8.401(a); see also, *ATA Defense Indus., Inc. v. United States*, 38 Fed. Cl. 489, 501 (1997). The procedures established for the FSS program satisfy the general requirement for full and open competition. 41 U.S.C. §259(b)(3); FAR §6.102(d)(3); *Sales Resources Consultants, Inc.*, B-284943, B- 284943.2, 2000 CPD P 102, 2000 WL 760323, 3.

Non-FSS products and services may not be purchased using FSS procedures; instead, their purchase requires compliance with the applicable procurement laws and regulations, including those requiring the use of competitive procedures. See *Idea International, Inc. v. United States et al.*, 74 Fed.Cl. 129, 138-139 (2006); *ATA Defense*, 502-503 ("It is fundamentally inconsistent with Congress' unambiguous statutory mandate in the CICA to allow a contracting officer, when purchasing products against the FSS, to include in the purchase order "incidental" products that are competitively available, unless the prices charged for these "incidental" products are the product of full and open competition"); See also, *Pyxis Corp.*, B- 282469, B- 282469.2, 99-2 CPD P 18, 1999 WL 510244, 3-4 (Comp.Gen.). In this case, the RFQ unequivocally states that offerors may only submit quotes based upon product presently offered under their FSS Contract ("All products and

---

"the statute gives presumptive weight to the otherwise required showings of irreparable harm and public interest"). Should this Court reach the merits of Landoll Corporation's Complaint, the remaining injunctive relief prongs would be irrelevant because the CICA stay can be imposed via declaratory relief. *Id.* (quoting and following *Chapman Law Firm, supra* and *CIGNA Government Services v. United States*, 70 Fed. Cl. 100, 114 (2006)).

services offered must be on your current GSA schedule contract.") Landoll complied with the Solicitation and offered the only product on its GSA schedule contract that met the specifications, the Landoll 610-NG.

WSE clearly did not submit a product from its FSS Contract, because the only trailers it offers for sale are not capable of tilting to accommodate large pieces of disabled equipment often towed on the trailers by the military. Further, WSE Schedule Items:

- do not list a hydraulic trailer in either of the two flatbed trailers; Over 40% of the 4 page TACOM specification is devoted to the hydraulic operation of the trailer, there is absolutely no mention of the hydraulic capability of the two trailers on the website from WSE.
- The WSE Item Kingpin height is listed at 48 inches (60 to 64 required by the TACOM specification) and WSE kingpin setting 48 or 39 (21 inches required by the TACOM specification) do not match the requirements of the TACOM specification.
- One major change that WSE would have to make is to allow for the hydraulic tilting deck which is accomplished by the use of a cylinder to move the wheels ahead, and the tilting cylinders to tilt the lower deck. These changes are not listed in the website and this would be major design change to the frame of the trailer. These changes would require testing to insure this new frame design would handle the load.
- Another change is the use of a 3-1/2 diameter kingpin. The standard kingpin on over the road commercial trailers is a 2 inch kingpin. This larger kingpin in addition to the higher kingpin height would take a substantial design effort to change from the standard listed on the GSA schedule.
- The WSE website also does not talk about or discuss the addition of a 20,000 lb hydraulic winch for the trailer.
- As a leasing company they would have to find another manufacturer to build the trailer and then get it approved and on to the GSA schedule.

This is not a case where the agency invited offers outside the FSS system and otherwise conducted a full and open competition in accordance with FAR Part 15. To the contrary, the RFQ limited offers to trailers currently offered by the offeror on the FSS. Further, a procedure of full and open competition was not otherwise followed. Notably, TACOM

(a) allowed an award with an extended delivery date beyond that published in the RFQ (**as much as 153 days, versus the 90 days allowed by the RFQ** without modifying the solicitation or allowing Landoll to resubmit its offer with the

extended delivery date;

(b) **awarded the contract according to modified specifications** developed specifically for WSE and not provided to Landoll (see Exhibit J to Complaint, page 28, references specifications **dated June 24, 2008**, about 45 days after the publication of the RFQ, rather than the specifications attached to the RFQ)

(c) apparently allowed WSE to submit a new or revised offer on May 23, 2008, 11 days after the announced closing date for the submission of proposals; no such opportunity was afforded to Landoll (see Exhibit J to Complaint, pg. 2); and

(d) announced in the RFQ that it would not allow open market items, i.e., items not on the FFS; TACOM never notified Landoll of any change in this requirement.

TACOM's failure to follow the RFQ requirements and failure to follow all of the full and open competition procedures prejudiced Landoll. For example, Landoll submitted its bid on the basis of its Schedule Item product and pricing. Had Landoll been told that it could offer a product not on its Schedule Contract, it could have, and would have, substantially reduced the 'bells and whistles' on its existing product and provided a product offered at a lower price than WSE, given the stated evaluation criteria of technologically acceptable, lowest-price. Being locked in to provide its FFS Contract Item, Landoll had no such discretion to substantially modify its existing FSS item. Further, Landoll provided an offer that reflected substantial overtime and expedited material costs to meet the 90 day delivery requirement; had it been allowed to quote a product with a 133-153 delivery request, as WSE did, Landoll could have eliminated some of this cost.

Therefore, Landoll was the only responsible offeror offering the only responsive proposal in response to the Solicitation, and TACOM was required by the terms of the Solicitation to reject WSE's offer and award the Solicitation contract to Landoll, and Landoll only. Thus, Landoll is very likely to prevail on the merits of this action.

### B. Landoll Will Suffer Irreparable Harm Absent a Temporary Restraining Order or Preliminary Injunctive Relief

It is axiomatic that, under these circumstances, Landoll will suffer an irreparable injury

unless this Court grants Landoll's application for a temporary restraining order or its motion for a preliminary injunction. "A loss of potential profits 'stemming from a lost opportunity to compete on a level playing field has ... been found sufficient to constitute irreparable harm." *OTI America, Inc. v. United States*, 68 Fed. Cl. 646, 659 (2005) (quoting *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 654 (2003)); *see also United Payors & United Providers Health Srvs., Inc. v. United States*, 55 Fed. Cl 323, 333 (2003) (finding irreparable injury where plaintiff "would not be able to recover lost profits associated with its loss of business"). In short, "[a]n award of bid preparation costs would not, by itself, be sufficient to redress the injury" experienced by Landoll, should WSE be permitted to continue its transition. *OTI America*, 659.

**C. The balance of harms and the Public Interest Decidedly favors Landoll**

The DoD/TACOM would suffer no harm if it were enjoined from allowing WSE to proceed with contract performance. As this Court has held, "[i]t is well established that there is an overriding public interest in preserving the integrity of the federal procurement process by requiring government officials to follow procurement statutes and regulations." *CW Government Travel, Inc. v. United States*, 61 Fed. Cl. 559, 576 (2004); See also *PGBA, LLC v. U.S.*, 57 Fed.Cl. 655, 663 (Fed.Cl.,2003)("In the instant case, the public's interest likewise lies in preserving the integrity of the competitive process-such, indeed, clearly was Congress' view in providing that, except in circumstances not yet demonstrated here, the automatic stay should prevail.").

In this case, the public's interest favors relief as requested as the public has "a long-term interest in ensuring that the new contract represents the best overall value to the government." *PGBA*, 663. As in *PGBA*, "[g]iven the fact that there is no real indication that reinstituting the

stay will impair services to a significant extent…these long-term interests are paramount here and are best served by issuing the proposed injunction." *Id.;* See also *University Research*, 65 Fed. Cl. At 514 ("[t]he costs and inconvenience associated with the delay in transition caused by the issuance of a preliminary injunction in this case are typical of the costs and inconveniences that fact almost every new contractor seeking to unseat an incumbent contractor, and do not outweigh the imminent harm to plaintiff").

## IV. CONCLUSION

As evidenced by the foregoing, Landoll meets all the requisites for a temporary restraining order and/or preliminary injunction. DoD/TACOM will not be harmed by the imposition of a restraining order and/or preliminary injunction because it will be prevented from spending its funds on a contract the Court is likely to find void. And, to the contrary, failure to grant Landoll's application and motion would cause far more harm to the integrity of the procurement process, to the taxpayer, and to Landoll, than allowing the *status quo*.

Dated: July 26, 2008

MOORE & HENNESSY, P.C.

By: [signature]

Darcy V. Hennessy MO Bar #27125
Admitted 10/30/86 to CFC
4600 Madison, Ste. 700
Kansas City, MO 64112
(816)753-3030 Telephone
(816)753-3036 Facsimile

COUNSEL OF RECORD FOR PLAINTIFF
LANDOLL CORPORATION

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of Landoll Corporation's Complaint, Memorandum of Points and Authorities in Support of Application for Temporary Restraining Order and Motion for Preliminary Injunction, Application for Temporary Restraining Order, and Motion for Preliminary Injunction to be served this 28th day of July, 2008, by facsimile and e-mail on the following:

U.S. Department of Justice
Civil Litigation Division
Commercial Litigation Branch
1100 L Street, NW
Washington, DC 20530
Tel: (202)307-0843
Fax: (202)307-0972
*Counsel for Defendant*

WSE Leasing, Inc.
3000 Pinson Valley Pkwy
Birmingham, AL 35217-1810

M.J. Franzen
Contracting Officer
U.S. Army TACOM
Life Cycle Management Command
6601 E. 11 Mile Road
Warren, MI 48397-5000

Of Counsel:
Leslie A. Boe
Moore & Hennessy, P.C.
4600 Madison, Ste. 700
Kansas City, MO 64112

Darcy V. Hennessy